UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT H., [1]

                Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

6:19-CV-06619 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Robert H. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 14), and Plaintiff's reply (Dkt. 15).  For the reasons discussed below, Plaintiff's motion (Dkt. 13) is granted in part and Defendant's motion (Dkt. 14) is denied.

---

[1]     In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

## BACKGROUND

Plaintiff protectively filed his application for DIB on April 21, 2016.  (Dkt. 9-2 at 16, Dkt. 9-5 at 2-3).[2]  In his application, Plaintiff alleged disability beginning March 22, 2015.  (Dkt. 9-2 at 16, Dkt. 9-5 at 2).  Plaintiff's application was initially denied on June 20, 2016.  (Dkt. 9-2. at 16, Dkt. 9-4 at 6-17).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Connor O'Brien in Rochester, New York, on August 22, 2018.  (Dkt. 9-2 at 16, 35-88).  On October 3, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 15-28).  Plaintiff requested Appeals Council review; his request was denied on July 8, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 2-6).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[2]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

## I.  **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2021. (Dkt. 9-2 at 18). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 22, 2015, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: status-post motor vehicle accident, degenerative disc disease of the cervical and lumbar spine, sleep apnea, history of aortic valve stenosis, and depressive disorder.  (*Id.* at 19).  The ALJ further found that Plaintiff's medically determinable impairment of right knee pain was non-severe.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.*).  The ALJ particularly considered the criteria of Listings 1.04, and 12.04, in reaching her conclusion.  (*Id.* at 19-21).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> [H]e can sit for 6 hours and stand/walk for 2 hours (each) in an 8-hour workday.  He requires a sit/stand options that allows for changing position every 60 minutes for up to 5 minutes.  He cannot climb a rope, ladder or scaffold; cannot balance on narrow, slippery or moving surfaces; and cannot kneel or crawl.  He can occasionally stoop, crouch and climb ramps/stairs, but cannot work overhead.  He can occasionally push/pull.  He requires three additional, short, less-than-five-minute breaks in addition to regularly scheduled breaks.

(*Id.* at 21).  At step four, the ALJ found that Plaintiff was able to perform past relevant work as a call center technical support analyst/user support analyst.  (*Id.* at 27).

Alternatively, at step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer and order clerk.

(*Id.* at 28).   Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 29).

## II.      **Remand of this Matter for Further Proceedings is Necessary**

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing (1) the RFC is not supported by substantial evidence because the ALJ improperly evaluated the opinion of occupational therapist Joseph Higgins, and (2) the ALJ improperly rejected all expert medical opinions and formulated an RFC based on her lay interpretation.  (Dkt. 13-1 at 9-18).   The Court has considered each of these arguments and, for the reasons discussed below, finds that the RFC is not supported by substantial evidence because the ALJ erred in her assessment of Higgins' opinion, and this error requires remand for further administrative proceedings.

### A.      **Assessment of the RFC and Medical Opinion Evidence**

Plaintiff's first argument is that the ALJ erred in her assessment of his RFC. Specifically, Plaintiff contends that the ALJ failed to give valid reasons for rejecting the functional capacity assessment conducted by occupational therapist Higgins.  In response, Defendant contends that the ALJ did not completely reject the opinion of Higgins or alternatively, even if she did reject the opinion, she had sufficient evidence to support that partial rejection because the opinion is inconsistent with the objective medical evidence of record, Plaintiff's improvement with medication, and activities of daily living.  (Dkt. 14-1 at 15).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*

*v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Higgins, an occupational therapist, is not considered an "acceptable medical source" under the Regulations. *See* 20 C.F.R. § 404.1502(a). Nonetheless, "[t]he evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." SSR 06-03p, 2006 WL 2329939. "[I]t may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* "[M]edical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists" and "are important and should be evaluated on key issues

- 7 -

such as impairment severity and functional effects, along with the other relevant evidence in the file." *Jill S. G. v. Comm'r of Soc. Sec.,* No. 19-CV-01103, 2021 WL 492114, at *6 (W.D.N.Y. Feb. 10, 2021).

On August 15, 2017, Higgins conducted a functional capacity evaluation of Plaintiff. (Dkt. 9-10 at 51-54). Higgins reported that Plaintiff moved with gross guarding of his gait-station and sat with regular postural shifts. (*Id.* at 51). A lumbar exam showed muscle tightness in the right mid-lower paraspinal muscles, but no acute pain aggravation on palpation of the lumbar spine. (*Id.*). Higgins' evaluation showed that Plaintiff flexed to 75% in the low back with no significant guarding pain and extension was 75% poor reversal flexion to extension. (*Id.*). The report indicated that Plaintiff had negative slump and straight leg test for radiating leg pain. (*Id.*). Higgins indicated that Plaintiff's balance was normal, but he walked with an abnormal guarded gait pattern with no antalgic gait defects. (*Id.*). Plaintiff was reported to be able to toe heel walk, but braiding with leg behind showed postural pain guarding of his low back. (*Id.*). Plaintiff's cervical region grossly showed normal range of motion, but his grasp and pinch power were below average, with scores at the 10-25% range for males of his age. (*Id.*). Higgins noted that Plaintiff's BTE Work Simulator Scores reflected well below tolerance for the use of his arms lifting out and away from his body or below waist-height, as a result of back pain in the mid-thoracic spine. (*Id.*). Higgins opined that Plaintiff could occasionally lift 25 pounds, could sit in a chair for 45 minutes, stand up to 35 minutes with shift off left side pain, and walk for 10-15 minutes on flat even surfaces, but overall endurance tolerance is diminished due to his lower back. (*Id.*). Higgins projected that Plaintiff's "work tolerance

long term is relatively limited for functional for activity that has frequent or sustained stress to his lower back in non-stabilized flexed or rotated low back postures.  He will likely need ACCESS VR to help him transition to sedentary to light activity for his work career." (*Id.*). Higgins opined that Plaintiff was able to sit for 3-5 hours, stand for 1-5 hours, and walk for 1-3 hours each workday.  (*Id.* at 53).  He also concluded that Plaintiff needed to change postures intermittently 3-8 times per hour over the course of the day to relieve pain in the back.  (*Id.*).  Higgins checked a box reflecting Plaintiff having the exertional ability to perform sedentary work.  (*Id.* at 54).

In her decision, the ALJ described Higgins' findings.  (Dkt. 9-2 at 25).  After outlining Higgins' findings and opinion, the ALJ stated, "I assign some weight to this opinion, because it is based on an examination.  In the end, Higgins indicated that the claimant could perform light and sedentary work, noting up to 25 pounds." (*Id.* at 25-26). While providing some insight as to why some weight was given to Higgins' opinion, the ALJ offers no explanation to otherwise reject Higgins' opinion.

The ALJ's failure to fully and adequately address the weight given to the opinion offered by Higgins—which provides a detailed assessment of Plaintiff's physical functional limitations—is problematic.  Although Higgins was not Plaintiff's treating physician, the ALJ was nonetheless required to offer a satisfactory explanation as to why she did not find his assessment of Plaintiff's physical functional limitations persuasive. *See Pappas v. Saul*, 414 F. Supp. 3d 657, 675 (S.D.N.Y. 2019) ("[t]he requirement to explain the evaluation of a physician's medical opinion applies to non-treating physicians as well") (citations omitted) (alteration in original); *Beckers v. Colvin*, 38 F. Supp. 3d 362,

371 (W.D.N.Y. 2014) (explaining that an ALJ should explain the weight given to opinions from other sources, or otherwise ensure that the discussion of the evidence allows the claimant or subsequent reviewer to follow the ALJ's reasoning, particularly when such opinions may have an effect on the outcome of the case).  Here, while the ALJ did assign "some weight" to Higgins' opinion, no guidance is provided as to how that assignment was reached.  Indeed, the only reason provided at all to explain the assignment of some weight—that the opinion was based on an examination—would serve to credit and not discredit the underlying opinion.  Moreover, any error in not providing any reasons to not give Higgins' opinion greater weight cannot be considered harmless in this case.  At the hearing, in response to a hypothetical from counsel that reflected and specifically cited to Higgins' report and opinion advocating a need to change positions three to eight times per hour, the vocational expert testified that an inclusion of that limitation would bring the individual down to less than full time work.  (Dkt. 9-2 at 84-85).

Further confusion was created by the ALJ's stated reasons for not giving greater weight to one of Plaintiff's treating physician's opinions.  In discussing the treating physician's opinion, the ALJ stated, "this physician also noted they were not an occupational therapist nor did they have the tools to measure the claimant's ability to pull, push, lift or carry."  (Dkt. 9-2 at 26).  As a basis for giving the opinion little weight, the ALJ reasoned that the treating physician "admitted they were not well suited to offer insight into the claimant's functional limitations and thus their opinion is deemed less persuasive than individual with experience assessing such abilities and restrictions."  (*Id.* at 26-27). This reasoning juxtaposed with the ALJ's failure to give Higgins' opinion greater weight

makes it further unclear how the ALJ's evaluation of medical opinion evidence was conducted.  The ALJ's failure to provide a proper explanation leaves the Court to speculate whether the ALJ substituted her lay judgment for a competent medical opinion.

Defendant points to other objective medical evidence of record and Plaintiff's testimony to argue that the record provides ample support to find that substantial evidence exists for the ALJ's rejection of Higgins' opinion.  (*See* Dkt. 14-1 at 15).  However, the ALJ did not discount Higgins' opinion on that basis, and Defendant's after-the-fact explanation as to why the ALJ rejected his opinion cannot serve as a substitute for the ALJ's findings.  *See Anne P. v. Saul,* No. 1:19-CV-00711-MJR, 2021 WL 671894, at *6 (W.D.N.Y. Feb. 22, 2021) ("A post hoc explanation for why this impairment was seemingly ignored by the ALJ cannot be accepted."); *Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014) (rejecting Commissioner's attempt to justify the ALJ's failure to incorporate a treating physician's opinion into his RFC); *see also Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) (a reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action); *McFarland-Deida v. Berryhill,* 17-CV-6534, 2018 WL 1575273, at *4 (W.D.N.Y. Apr. 1, 2018) ("The Commissioner may not substitute her own rationale when the ALJ failed to provide one." (citing *Snell,* 177 F.3d at 134 (2d Cir. 1999)); *Michels v. Berryhill*, No. 1:15-CV-00688 (MAT), 2018 WL 1081013, at *3 (W.D.N.Y. Feb. 28, 2018) ("It is not the role of this Court to weigh the evidence of record and determine in the first instance whether or not Plaintiff's learning disorder constituted

a severe impairment—that task falls to the ALJ, who failed to fulfill his obligation in this case.").

In sum, while the ALJ is not required to take Higgins' opinion or other record evidence at face value, she must adequately explain why she has failed to credit this evidence and how other evidence in the record supports Plaintiff's ability to perform the activities required by the RFC.  Accordingly, remand is required.  On remand, should the ALJ determine that Higgins' opinion is entitled to only some weight, she must adequately explain why she has rejected the opinion.

### B.   Plaintiff's Remaining Argument

As set forth above, Plaintiff has identified an additional reason why he contends the ALJ's decision was not supported by substantial evidence.  However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue.  *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 13) is granted to the extent that the matter is remanded for further administrative proceedings.  The Commissioner's motion (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 26, 2021
        Rochester, New York